UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:     GREGORY PATRICK HARDESTY and          Case No. 13-30075-KRH
           JOAN CAROL HARDESTY,                  Chapter 13

                Debtors.
_____

RACHEL ROSENBLUM,

                Plaintiff,

v.                                                APN 15-03437-KRH

GREGORY HARDESTY,

                Defendant.
_____

## MEMORANDUM OPINION

Before the Court is the complaint (the "Complaint") filed by Rachel Rosenblum (the "Plaintiff") against the chapter 13 Debtor, Gregory Hardesty (the "Defendant"), initiating this Adversary Proceeding. The Complaint asks for this Court (i) to find that Plaintiff suffered monetary damages resulting from Defendant's breach of a property settlement agreement; (ii) to declare those damages non-dischargeable pursuant to § 523(a)(5) of the Bankruptcy Code; and (iii) to prohibit Defendant from discharging those damages under § 1328(a) of the Bankruptcy Code.

The Court conducted a trial on Plaintiff's Complaint (the "Trial") on May 3, 2016 (the "Trial Date"). At the conclusion of the Trial the Court took the matter under advisement. After considering the applicable statutory authority, the case law, the pleadings, and the arguments of counsel, the Court now concludes that the damages resulting from Defendant's breach of the

property settlement agreement are dischargeable under § 1328(a) of the Bankruptcy Code and enters judgment in this Adversary Proceeding in favor of Defendant. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

## Factual Background

Plaintiff and Defendant were lawfully married on December 2, 2000. Plaintiff and Defendant had two children together arising from the marriage. Following a trial separation in 2008, the Plaintiff and Defendant entered into a property settlement agreement in January 2009 (the "Original Agreement"). In September 2009, Plaintiff and Defendant executed a supplemental property settlement agreement (the "Supplemental Agreement") that modified certain terms of the Original Agreement (the Original Agreement as modified by the Supplemental Agreement is hereinafter referred to as the "Property Settlement Agreement"). On November 16, 2009, the Virginia Circuit Court of the County of Hanover entered a final decree of divorce, dissolving the marriage between Plaintiff and Defendant (the "Final Decree"). The Final Decree affirmed, ratified and incorporated, but did not merge, the Property Settlement Agreement into the Final Decree. The Property Settlement Agreement did not provide for the payment of any spousal or child support. It granted Defendant 65% custody of the two children

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

and gave the Plaintiff 35% custody.

The Property Settlement Agreement addressed the disposition of the marital residence, which was encumbered by two deeds of trust. Defendant was granted exclusive possession of the marital residence and was required to assume full responsibility for the payment of the note secured by the first priority deed of trust and "any and all insurance, utility, real estate taxes, homeowner association fees, and all repair and maintenance costs for [the] realty." Under the terms of the Property Settlement Agreement, Defendant agreed to "indemnify and hold [Plaintiff] harmless for the payment of these items, debts, and obligations" (the "Indemnity Provision"). The Property Settlement Agreement required Defendant to refinance "the mortgage" on the marital residence or remove the Plaintiff's name from liability.[2]

More than three years after entry of the Final Decree, Defendant filed a voluntary petition under chapter 13 of the Bankruptcy Code on January 7, 2013 (the "Petition Date"), in this Court. Sometime after the Petition Date, Defendant ceased making payments on the note secured by the first deed of trust on the marital residence in violation of the Property Settlement Agreement. During the time period between the Petition Date and the Trial Date, the Defendant presented three different motions to the Court requesting authority to sell the martial residence. No sale of the marital residence was ever consummated, however, as all three of the prospective purchasers backed out of their respective sales contracts.

Plaintiff alleges in her Complaint that Defendant has breached the Property Settlement Agreement because he failed to remove her name from liability for "the mortgage." She alleges additional breaches arising from Plaintiff's failure to make payments on the note secured by the

---

[2] It is not clear whether this provision applied to the note secured by second deed of trust lien on the marital residence or only to the first. The Indemnity Provision was not meant to apply to the obligation secured by the second deed of trust lien.

first deed of trust, to keep the property in repair, and to consummate a sale of the marital residence. Plaintiff alleges that she was damaged as a result of these breaches because her credit score was lowered, causing her to incur additional fees and costs when she applied for her own financing for the purchase of a new home.[3] Plaintiff asserts that the Indemnity Provision allows her to recover her damages.

The Plaintiff contends that these damages should be characterized as non-dischargeable, domestic support obligations under § 523(a)(5) of the Bankruptcy Code. The Property Settlement Agreement purports to make the Indemnity Provision non-dischargeable, stating (the "Bankruptcy Provision"):

> The parties further specifically agree and intend that any hold harmless or debt agreements shall be in the nature of alimony or spousal support and maintenance, and such shall not be dischargeable in bankruptcy under § 523(a)(5) of the Bankruptcy Code, or any other applicable section of the Bankruptcy Code, as it is not a division of property or a property settlement.

Defendant counters that the Property Settlement Agreement expresses the clear intent of the parties for the waiver of any claims for support or maintenance. One section of the Property Settlement Agreement waives the claims of both spouses for child support. In another section of the Property Settlement Agreement, after taking into consideration a list of thirteen separate factors, the parties agreed to waive any and all claims for spousal support and maintenance, stating (the "Waiver Provision"):

> Considering the circumstances of each in light of the above listed factors and considering her reasonable requirements, giving due consideration to her own ability to provide for her own support and maintenance, Wife, therefore, waives any and all claims to support and maintenance for herself and hereby releases and discharges Husband absolutely and forever for the rest of his life, from any and all claims and demands, past, present or future, for support and maintenance.

---

[3] The Court only heard evidence on whether the Plaintiff's claim for damages was non-dischargeable, reserving the question of the amount of damages for another time.

4

The interplay (and inconsistency) between the Waiver Provision that clearly waives any right to support and maintenance on the one hand, and the Bankruptcy Provision that seemingly resurrects a claim for support and maintenance for breach of the Property Settlement Agreement on the other hand, lies at the heart of the dispute between the parties.

## Analysis

A debtor who completes all payments under a confirmed chapter 13 plan is eligible to receive a discharge under 11 U.S.C. § 1328(a). Section 524 of the Bankruptcy Code describes the effect of a discharge in a case under chapter 13.[4] Section 523 of the Bankruptcy Code enumerates certain obligations that are excepted from discharge, thereby rendering those types of debts as non-dischargeable. Section 523(a)(5) creates a dischargeability exception for a "domestic support obligation." 11 U.S.C. § 523(a)(5). Section 101(14A) of the Bankruptcy Code defines:

> The term "domestic support obligation" [to mean] a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is–
> (A) owed to or recoverable by–
>   (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>   (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–
>   (i) a separation agreement, divorce decree, or property settlement agreement;
>   (ii) an order of a court of record; or

---

[4] Chapter 5 of the Bankruptcy code is generally applicable in all cases under chapter 7, 11, 12, and 13 of the Bankruptcy Code. *See* 11 U.S.C. § 103(a). A discharge operates generally as an injunction against the commencement or continuation of any act to collect or recover a prepetition obligation from a debtor, whether or not discharge of such debt is waived. 11 U.S.C. § 524(a).

5

>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A). Section 523(a)(15) creates a dischargeability exception for all other kinds of debts that a debtor may incur to a spouse in the course of a divorce or separation not included in the definition of a domestic support obligation.[5]

Section 523 of the Bankruptcy Code, by its terms, is not applicable to a chapter 13 discharge under § 1328(a) of the Bankruptcy Code. *See* 11 U.S.C. § 523(a). For this reason, a chapter 13 discharge is often referred to as a "super discharge" as it discharges certain debts that would otherwise be non-dischargeable in a case under other chapters of the Bankruptcy Code, including chapter 7. Section 1328(a)(2) incorporates some but not all of the exceptions to discharge set forth in § 523 of the Bankruptcy Code.[6] The discharge exception for a domestic support obligation is included as a non-dischargeable debt under § 1328(a) of the Bankruptcy Code. However, § 523(a)(15) is omitted from the incorporated list of excepted debts. Accordingly, an obligation incurred as part of a property settlement agreement that is not in the nature of a domestic support obligation can be discharged in a chapter 13 case.

The issue presented in this case is whether the Indemnity Provision falls under § 523(a)(15) of the bankruptcy Code and is dischargeable or whether it falls under § 523(a)(5) of

---

[5] This provision excepts from discharge any debt:

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

11 U.S.C. § 523(a)(15).

[6] Section 1328(a)(2) only excepts from the chapter 13 super discharge debts "of the kind specified . . . in paragraph 1(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)." 11 U.S.C. § 1328(a)(2).

6

the Bankruptcy Code and is non-dischargeable. The determination of that issue rests on whether the Indemnity Provision is in the nature of alimony, maintenance, or support. That in turn is a question of federal bankruptcy law. *See Matter of Long*, 794 F.2d 928, 930 (4th Cir. 1986).

"The analysis of dischargeability under section 523 must begin with the assumption that dischargeability is favored under the Code, unless the complaining spouse, *who has the burden of proof*, demonstrates the obligation at issue 'is actually in the nature of alimony, maintenance or support.'" *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986) (emphasis in original) (quoting *In re Morris*, 10 B.R. 448 (Bankr. N.D. Iowa 1981)). The burden of proof rests with the objecting spouse. *Id.* For a court to characterize an obligation as a domestic support obligation, the court must find there was a "mutual intent" to create an obligation in the nature of alimony, maintenance, or support. *Id.* To help determine whether the mutual intent standard has been satisfied, courts in the Fourth Circuit have applied a four-factor test. *See Catron v. Catron (In re Catron)*, 164 B.R. 912, 918-20 (E.D. Va. 1994); *Combs v. Combs (In re Combs)*, 543 B.R. 780, 798-800 (Bankr. E.D. Va. 2016); *In re Johnson*, 397 B.R. 289, 297 (Bankr. M.D.N.C. 2008); *see also Catron v. Catron*, No. 94-1279, 1994 WL 707966 (4th Cir. Dec. 21, 1994) (approving a lower court's use of the four factor analysis). A court should consider: "1) the actual substance and language of the agreement; 2) the financial situation of the parties at the time of the agreement, 3) the function served by the obligation at the time of the agreement (i.e. daily necessities), and 4) whether there is any evidence of overbearing at the time the agreement." *Johnson*, 397 B.R. at 297. However, "courts may look beyond the four corners of a divorce decree or the agreement of the parties to determine the nature of the payments constituting debts sought to be discharged." *Id.*

7

*The Substance and Language of the Agreement*

Plaintiff has failed to carry her burden of proving that the substance and the language of the Property Settlement Agreement evidences a mutual intent to create an obligation in the nature of alimony, maintenance, or support. The conflicting provisions in the Property Settlement Agreement do not demonstrate a clear intent to create an obligation in the nature of alimony, maintenance, or support. The Indemnity Provision is more appropriately characterized as an obligation arising out of a property settlement agreement under § 523(a)(15).

Most of the Property Settlement Agreement concerns issues involving the distribution of the property to and the assumption of liability by the former couple. The only provisions of the Property Settlement Agreement that relate to alimony, maintenance, or support are the express waivers of the right to pursue such claims. Paragraph eighteen (18) of the Property Settlement Agreement, titled "SUPPORT FOR THE CHILDREN," expressly waives any right to child support for either party. Paragraph twenty-nine (29) of the Property Settlement Agreement, titled "SPOUSAL SUPPORT," waives any right to the receipt of spousal support or maintenance for either party.

These waiver provisions serve as a permanent and broad bar insulating the Defendant against any claims advanced by Plaintiff. Plaintiff very clearly "waiv[ed] any and all claims to support and maintenance for herself and . . . release[d] and discharge[d] the Husband . . . from any and all claims and demands, past, present or future, for support and maintenance." This waiver and release does not contain any carve out or exception – it is an absolute and permanent waiver of the right to seek support and maintenance and an absolute and permanent release of the Defendant from any such liability.

Plaintiff, however, wants the Court to ignore the Waiver Provision.[7] Plaintiff stakes her claim for maintenance and support upon the section of the Property Settlement Agreement titled "BANKRUPTCY." That provision purports to render non-dischargeable the very claims that Plaintiff has already released and waived under the terms of the Property Settlement Agreement. The Bankruptcy Provision provides that the obligations under the Indemnity Provision "shall be in the nature of . . . spousal support and maintenance." Problematically for Plaintiff, the Indemnity Provision is not. The Indemnity Provision, which is located in a section titled "MARITAL RESIDENCE," involves the distribution of property. The Indemnity Provision serves to allow Plaintiff the right to recover damages that may be occasioned by Defendant's failure to perform obligations he agreed to assume in connection with the note secured by the first priority deed of trust on the marital residence.

The Court finds the Waiver Provision demonstrates the parties' clear mutual intent. The Waiver Provision is located in the section of the Property Settlement Agreement titled "SPOUSAL SUPPORT". It unambiguously waives any right of either party to assert a claim for support or maintenance. *See Johnson*, 397 B.R. at 297 (citing *Tilley*, 789 F.2d at 1077-78) ("The labels attached to certain provisions in a separation agreement are not dispositive of their "nature," but the labels are persuasive evidence of the parties' intent."). The parties cannot render a dischargeable obligation as non-dischargeable by calling the obligation something it is not. The Court must find that the obligation actually "is in the nature of alimony, maintenance, and support." 11 U.S.C. § 101(14A). The Waiver Provision clearly forecloses any such finding.

Plaintiff argues that the Waiver Provision becomes inapplicable upon breech of the

---

[7] It is telling that the copy of the Property and Settlement Agreement that Plaintiff offered into evidence conveniently omitted the page that contained the Waiver Provision. *See* Plaintiff's Exhibit No. 3 (omitting page 16 of 21). Only after the Court raised a question about the missing page was it offered into evidence. *See* Plaintiff's Exhibit No. 5 (page 16 of 21).

9

Property Settlement Agreement. Plaintiff contends that the Bankruptcy Provision serves to resurrect Plaintiff's waived claim for support and maintenance upon the event of a default. The Court does not agree. The Court finds nothing in the text of the Waiver Provision that supports Plaintiff's interpretation. The Indemnity Provision bears every semblance of an allocation of liability arising out of the distribution of property, not of an obligation involving alimony, maintenance, or support. *See In re Uzaldin*, 418 B.R. 166, 171-72 (Bankr. E.D. Va. 2009) ("A debt owed to a former spouse that is in the nature of 'alimony, maintenance, or support' . . . does not include a debt arising from a property settlement agreement . . . ."). The Indemnity Provision is not located in the spousal support section of the Property Settlement Agreement where support and maintenance are clearly and unambiguously waived "forever." *See Bangert v. McCauley (In re McCauley)*, 105 B.R. 315, 319 (E.D. Va. 1989) (emphasizing the significance of whether the divorce decree "contained another provision explicitly for alimony or support."). The Waiver Provision does not contain any conditions or exceptions – it is a waiver "absolutely and forever". *See In re Deberry*, 429 B.R. 532, 539 (Bankr. M.D.N.C. 2010) (finding a domestic support obligation despite the presence of a spousal support waiver when the waiver contained an "express condition[]"). There is no language in the Waiver Provision that suggests the absolute waiver becomes inoperable upon breach of the Property Settlement Agreement.

Objective scrutiny lends further support to the Court's conclusion. The Indemnity Provision simply lacks the true characteristics of alimony, maintenance, or support. First, the Property Settlement Agreement does not provide for the termination of the Indemnity Provision if one of the parties dies or chooses to re-marry. *See In re Austin*, 271 B.R. 97, 106 (Bankr. E.D. Va. 2001) ("A contingency such as whether the obligation terminates upon the death or remarriage of the creditor spouse is relevant."). "The termination of the obligation upon the

remarriage or death of the ex-spouse evidences the shared intention of the parties to create an obligation in the nature of alimony maintenance or support . . . ." *Pagels v. Pagels (In re Pagels)*, 2011 WL 577337, at *12 (Bankr. E.D. Va. Feb. 9, 2011). As the Indemnity Provision does not terminate upon remarriage, death of a spouse, or a change in financial circumstances, it cannot be characterized as an obligation in the nature of alimony, maintenance, or support.

Second, the Property Settlement Agreement does not provide the appropriate tax treatment for the Indemnity Provision to be characterized as an obligation in the nature of alimony, maintenance, or support. The Court of Appeals for the Fourth Circuit has adopted a quasi-estoppel theory that "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *Robb-Fulton v. Robb (In re Robb)*, 23 F.3d 895, 898 (4th Cir. 1994) (quoting *Matter of Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991)) (internal quotation marks omitted). The Property Settlement Agreement treats the Indemnity Provision as an obligation under a property settlement agreement. The Internal Revenue Code provides that as a general rule "[g]ross income includes amounts received as alimony or separate maintenance payments." 26 U.S.C. § 71. Additionally, alimony or maintenance payments are deductible by the paying spouse. 26 U.S.C. § 215. If a separation agreement provides that the payments are not included in gross income by the payee spouse or deductible by the paying spouse, then the payments are likely not alimony or maintenance. *See Robb*, 23 F.3d at 898-99; *Tilley*, 89 F.2d at 1077-78; *Austin*, 271 B.R. at 107. Specifically, the Internal Revenue Code states that an obligation can only be classified as an alimony or maintenance payment if "the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income . . . and not allowed as a deduction." 26 U.S.C. § 71.

11

The Property Settlement Agreement does just that, however. It provides that any payments made on account of the Indemnity Provision are not includable in gross income and not deductible. Paragraph thirty-three (33) of the Agreement provides that "the parties further agree that the payment of such debts by either party as agreed shall not be taxable to the other party and deductible by the paying party as alimony for the purposes of filing State and Federal income taxes." This provision demonstrates that payments made under the Indemnity Provision would not be deemed support or maintenance payments under the Internal Revenue Code. *See Beiler v. Beiler*, 80 B.R. 63, 64 (E.D. Va. 1987) ("As further evidence that the parties did not agree or intend the said payment to be in the nature of alimony, maintenance or support, or in lieu thereof, wife did not report the sums received as income, nor did the husband take a deduction therefor."); *In re Krueger*, 457 B.R. 465, 478 (Bankr. D.S.C. 2011) ("If the parties do not derive any tax benefit from the obligations imposed by the Agreement, it suggests that the payments are in the nature of a property settlement and not for maintenance and support."). The Bankruptcy Provision contained in the Property Settlement Agreement purports to give Plaintiff all the benefits of an obligation for maintenance and support under the Bankruptcy Code without the necessary tax consequences of maintenance or support under the Internal Revenue Code. *See Robb*, 23 F.3d at 899 (holding that once a debtor classifies their obligations for tax purposes, he or she cannot "avoid[] the corresponding obligations or effects of this classification under the Bankruptcy Code.").

*Financial Situation of the Parties*

The Court also must consider the financial situation of the parties as part of its determination whether there was a mutual intent to create an obligation in the nature of alimony, maintenance, and support. "Common sense dictates that the party with weaker financial means,

upon marital separation from a party with strong financial means, is less likely to incur an obligation in the nature of alimony, maintenance and support." *Pagels*, 2011 WL 57737, at *13; *Combs*, 534 B.R. at 798-99.

The Court finds that the financial condition of the parties demonstrates that the Indemnity Provision was in the nature of property distribution and debt allocation rather than in the nature of alimony, maintenance, or support. Defendant was the party with the weaker financial condition at the time of the divorce. Plaintiff and Defendant each had similar incomes, but the Plaintiff had a much more consistent employment history. The two spouses split many of the expenses for their children, even though the Defendant was given 65% custody of the children in the Property Settlement Agreement. The Defendant's testimony that he could not afford an attorney during the negotiation of the Property Settlement Agreement also demonstrates his weaker financial condition at the time of the execution of the Property Settlement Agreement.

*The Function of the Obligation at the Time of the Agreement*

The Court must next consider the purpose of the Indemnity Provision and evaluate what role the obligation was intended to fulfill. *Combs*, 543 B.R. at 799. "An agreement that serves to provide such daily necessities as food, clothing, shelter and transportation is indicative of debt intended to be in the nature of support." *Pagels*, 2011 WL 57737, at *15; *see Combs*, 543 B.R. at 799.

The Court finds that the function of the Indemnity Provision was to advance the division of property and the allocation of debt. It was not to provide any daily necessities to Plaintiff. The obligation of the Defendant to pay the note secured by the first deed of trust encumbering the former marital residence did not affect the shelter or living conditions of Plaintiff. Defendant was the party entitled to exclusive possession of the marital residence. Plaintiff was never at risk

13

of being removed from the martial residence due to the Defendant's default under the terms of the Property Settlement Agreement. *C.f.*, *Gianakas v. Gianakas (In re Giankakas)*, 917 F.2d 759, 763-64 (3d Cir. 1990) (finding that a mortgage payment that allowed the objecting spouse to maintain the family home to be a domestic support obligation); *Johnson*, 397 B.R. at 297-98 ("[A]n obligation that is *essential* . . . to protect a residence constitutes a nondischargeable obligation.") (emphasis added). Plaintiff was able to rent an apartment and later upgrade to a larger apartment on her own. Despite Defendant's subsequent default under the Property Settlement Agreement, Plaintiff was ultimately able to purchase a new home for herself. The Court is hard pressed to find that the Defendant's default impacted the daily necessities of the Plaintiff. Her living condition appeared unaffected by the default.[8]

*Evidence of Overreaching*

The Court did not hear any evidence of overreaching by either party, but it was established that counsel for the Plaintiff drafted the Agreement during the separation proceedings.

**Conclusion**

Weighing the four factors, the Court finds that Plaintiff has not met her burden of proving that the mutual intent of the two spouses was for the Indemnity Provision to create an obligation in the nature of alimony, maintenance, and support. The Court finds that the parties unambiguously expressed their clear intent to waive their respective claims for support and maintenance. Other objective factors favor the Court's conclusion that the Indemnity Provision is not in the nature of alimony, maintenance or support. The Court finds that the Defendant's

---

[8] This is not to say that Plaintiff was not damaged or heavily inconvenienced by the Defendant's default. However, if Defendant's obligation truly arose to an obligation in the nature of maintenance or support, the failure of the Defendant to comply with the Property and Settlement Agreement should have clearly impacted the ability of Plaintiff to maintain her basic needs and living conditions.

14

obligations under the Property Settlement Agreement are of the nature of those set forth in § 523(a)(15) of the Bankruptcy Code. Accordingly the obligations arising out of the Indemnity Provision are dischargeable under § 1328(a) of the Bankruptcy Code.

A separate order entering judgment in favor of Defendant shall issue.

Entered: __June 13, 2016_____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:  June 13, 2016